HONORABLE JAMES L. ROBART

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

9
10
11
12
13
14
15
16
17

JEFFREY SMYTH and BETTY SMYTH,
husband and wife, and the marital
community composed thereof,

              Plaintiffs,

vs.

STATE FARM FIRE & CASUALTY CO.,
an Illinois corporation duly licensed in the
State of Washington,

              Defendant.

NO.    2:05-cv-0838JLR

PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY
JUDGMENT OF COVERAGE AND
FOR ATTORNEYS FEES

**NOTE ON MOTION
CALENDAR:
October 28, 2005**

18
19
20
21
22
23
24
25
26
27
28

## I. Introduction

Defendant State Farm has moved for summary dismissal of plaintiffs Smyth's complaint on the principle grounds that the contractual suit limitation period was not observed. Smyth has responded to that motion in detail in his Response to Defendant's Motion for Summary Judgment of Dismissal (dated and filed October 3, 2005), which is incorporated herein. Because the facts relevant to that motion establish as a matter of law that there is no legal basis for certain affirmative defenses asserted by State Farm, and further establish a right to coverage and to reimbursement of

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 1
C:\WP\Jeff's Cases (Active)\Smyth-State Farm\pleadings\Smyth Motion for SJ.wpd

**OSBORN MACHLER**
2125 Fifth Avenue
Seattle, WA  98121
206-441-4110 (Tel)
206-441-4220 (Fax)

legal fees and costs, plaintiff now cross-moves for partial summary judgment dismissing those affirmative defenses, and for a declaration of coverage.

## II. **Relief Requested**

Plaintiff moves to dismiss of the following affirmative defenses:

1.    Affirmative Defense  ¶1, based upon an "Amendatory Endorsement FE-7298.8" "Losses Not Insured."

2.    Affirmative Defense ¶2, based on Policy Form 7925, restricting collapse coverage to "actually fallen down or fallen into pieces.  It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing."

3.    Affirmative Defense ¶3, claiming no "accidental, direct physical loss" suffered.

4.    Affirmative Defense ¶4, claiming that Smyth increased the risk of loss;

5.    Affirmative Defense ¶4, claiming that Smyth failed to "start an action" against State Farm "within one year after the date of loss or damage."

6.    Affirmative Defense ¶5, claiming that Smyth's damages were "known losses."

7.    Affirmative Defense ¶7, claiming that the "applicable statute of limitations" has been violated.

8.    Affirmative Defense ¶8, claiming that plaintiff has failed to state a claim.

Plaintiff furthermore moves this court for a declaration that his policies afford him coverage for the collapse damage he has sustained, as that collapse is defined by the case law prior to the 1998-99 policy change, and that the 1998-99 policy change with regard to collapse is a nullity. Finally, plaintiff asks that it be awarded his reasonable attorneys fees and costs pursuant to Olympic

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT  - 2
C:\WP\Jeff's Cases (Active)\Smyth-State Farm\pleadings\Smyth Motion for SJ.wpd

**OSBORN MACHLER**
2125 Fifth Avenue
Seattle, WA  98121
206-441-4110 (Tel)
206-441-4220 (Fax)

Steamship Co. v. Centennial Ins. Co., 117 Wn.2d 37, 52 (1991)(holding that insured is entitled to attorneys fees expended in a justified action to obtain benefit of insurance contract).

### III.  Pertinent Facts

The facts which support this motion are set forth in Plaintiff's Response to Defendant's Motion for Summary Judgment of Dismissal (filed Oct. 3, 2005).  This factual recitation will be brief and will relate pertinent facts which are supported in the prior memorandum.

Smyth's home on Mercer Island has been insured continuously by State Farm from 1991 to the present.  Declaration of Jeff Smyth in Opposition to Motion for Summary Judgment of Dismissal (dated and filed October 3, 2005) at ¶ 2 (Smyth Declaration)(on file herein).  A large portion of the home is now substantially structurally impaired as a result of hidden decay.  Id. at 4.  Smyth's State Farm policies from 1991 to 1998 specifically insured against losses or damage caused by "collapse" due to "hidden decay."  In 1999, State Farm substantially modified Smyth's coverage for "collapse" by defining the term to mean the following:

> "Collapse means actually fallen down or fallen into pieces.  It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing."

Although the law requires advance notice, in writing, of any substantial change in coverage (as we discuss at length in the brief in opposition to State Farm's motion), no notice was furnished to Smyth of this change.  As a result, the definition of collapse adopted by our courts in the absence of an express definition applies.  In other words, by virtue of a Washington statute (RCW 48.18.2901), Smyth's collapse coverage remains to this date what it was under the "original" 1998 policy, which was in force before the unilateral coverage change in 1999.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT  - 3
C:\WP\Jeff's Cases (Active)\Smyth-State Farm\pleadings\Smyth Motion for SJ.wpd

**OSBORN MACHLER**
2125 Fifth Avenue
Seattle, WA  98121
206-441-4110 (Tel)
206-441-4220 (Fax)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In the spring of 2003, Smyth's experts identified substantial losses of structural integrity in several locations of the home including, but not limited to, the exterior decks, the exterior catwalk, prow windows on both sides of the home, and support beams under decks. A report from plaintiff's expert Ralph Allen is on file herein. See **Exh. 2** to the <u>Declaration of Simeon Osborn in Opposition to Motion for Summary Judgment</u> (dated and filed Oct. 3, 2005) (<u>Osborn Declaration</u>) (on file herein). State Farm has paid for the small portion of the losses which it concluded occurred prior to October 1998, by issuing an unsolicited check to Smyth in an amount determined by their own consultant Mr. Perrault. State Farm has never made an offer to settle the claim as a whole. <u>Smyth Declaration</u>, ¶¶ 8-10 (dated and filed Oct. 3, 2005)("<u>Smyth Declaration</u>").

In August of 2003, on the advice of counsel, Smyth made a formal claim for coverage to State Farm. <u>Smyth Decl.</u>, ¶ 5. An investigation ensued, but State Farm made no offer to settle and no money was paid to Smyth for repairs or the costs he incurred in performing destructive testing on his residence. Deposition of Jeffrey Smyth, at 96:22-97:17, attached as **Exhibit 1** to <u>Osborn Declaration</u>. On February 23, 2004, Smyth started this lawsuit against State Farm.[1] State Farm's activity records show that it learned of the lawsuit on or about February 26th. On March 2, 2004, State Farm drafted and signed a tolling agreement wherein it agreed to extend the one-year limitation period to 18 months, or one month after an offer of settlement, whichever is earlier.

_____

[1] Section I-Conditions, ¶7 of the State Farm policy requires that "the action must be *started* within one year . . . ." The term "started" is not defined in the policy. The dictionary defines "start" as "To begin an activity or movement; set out." The American Heritage Dictionary (2nd College ed. 1982). No specific definition may be ascribed to a term in an insurance policy unless the policy sets forth that definition. *See* numerous cases cited in Plaintiff's Brief in Opposition to Summary Judgment, on file herein. The State Farm policies are attached as **Exhibit J** to the <u>Declaration of Carlson</u>, at POL000173 to POL000445.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4
C:\WP\Jeff's Cases (Active)\Smyth-State Farm\pleadings\Smyth Motion for SJ.wpd

**OSBORN MACHLER**
2125 Fifth Avenue
Seattle, WA  98121
206-441-4110 (Tel)
206-441-4220 (Fax)

Osborn Decl., ¶ 3.  In that letter agreement, State Farm refused to take a position on the date of loss or damage. **Exhibit G**, at CLM000033, <u>Declaration of Carlson</u> (dated Sept. 10, 2003)(on file herein).

Claim investigation continued.  State Farm's experts focused solely on pre-1998 damage, believing that absent an actual falling down or falling to pieces, Smyth's post-1998 policies excluded coverage.  State Farm made a partial payment to Smyth in the fall of 1998, specifically conceding that Smyth reserved all of his rights against State Farm. **Exhibit A**, <u>Smyth Declaration</u>. When no further progress was made toward settling the claim, in April of 2005 Smyth served his complaint on the Insurance Commissioner.  There is no question but that this lawsuit was not precluded by (1) the original suit limitation language; (2) the tolled limitation period; or (3) the applicable six year statute of limitations for suits on written contracts.  RCW 4.16.040(1).

### IV.  Legal Authority and Argument

We address the affirmative defenses in the order they appear in State Farm's answer.

**A.     Affirmative Defense ¶1, based upon an "Amendatory Endorsement FE-7298.8" "Losses Not Insured."**

Ralph Allen testified that there are several items of substantially impaired structure beyond that for which State Farm paid.  Allen deposition at 64:22-65:22; 69:14-21; 70:8-71:20, attached as **Exhibit 2** to <u>Osborn Decl.</u>  This affirmative defense is based upon State Farm's contention that post-1998, Smyth had no coverage for "collapse" damage due to the restricted definition unilaterally interposed in the 1998-1999 policy, without advance notice.

Collapse is defined by Washington and other states' case law in several ways which are

**OSBORN MACHLER**
2125 Fifth Avenue
Seattle, WA  98121
206-441-4110 (Tel)
206-441-4220 (Fax)

applicable to the Smyth home's damage.  These cases are discussed and quoted at length in

Smyth's response to defendant's motion for summary judgment and that discussion will not be

repeated here.  In sum, there is substantial covered "collapse" damage, and collapse damage is in

fact "insured" by all Smyth's policies with State Farm.

**B.**   **Affirmative Defense ¶2, based on Policy Form 7925, restricting collapse coverage to "actually fallen down or fallen into pieces.  It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing."**

See paragraph A., above.  The unilateral restriction of the policy definition is not applicable

to Smyth's policies.

**C.**   **Affirmative Defense ¶3, claiming no "accidental, direct physical loss" suffered.**

"Coverage A - Dwelling" section of the State Farm policies provides coverage "for

accidental direct physical loss to the property described in Coverage A . . . ."  This phrase in not

defined in the policy.  The listed coverages do not include "collapse," but Section I - Additional

Coverages, section 13 states as follows:

> "**Collapse**.  We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following: . . .  b.  hidden decay; . . ."

Collapse, as discussed above, is not a defined term.  It has been construed by Washington courts

to mean, essentially, substantial structural impairment.  Whatever limitations Coverage A -

Dwelling might imply regarding coverage of damage to a dwelling are superseded by the

Additional Coverage provided for collapse.

State Farm has interposed this defense because of its belief that "Collapse" was

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT  - 6
C:\WP\Jeff's Cases (Active)\Smyth-State Farm\pleadings\Smyth Motion for SJ.wpd

**OSBORN MACHLER**
2125 Fifth Avenue
Seattle, WA  98121
206-441-4110 (Tel)
206-441-4220 (Fax)

substantially restricted by the illegal, unilateral change to Smyth's 1999 policy, and the restriction

of that definition causes coverage to default to the limited coverages listed in Coverage A -

Dwelling.  For the reasons set forth above, this defense is unmeritorious.

### D.   Affirmative Defense ¶4, claiming that Smyth increased the risk of loss.

Washington courts have addressed the "increased risk" defense as follows:

> "The 'knowledge or control' provision of the policy at issue states: 'We will not pay for loss while the chance of loss *is increased* by any means within your knowledge or control.'  State Farm argues that factual issues preclude summary judgment as to this defense.  We disagree.  State Farm argues that 'where, as here, a building owner has allowed water intrusion into the premises to continue until a collapse state is reached, there can be no question that State Farm's chance of loss has been substantially increased.'  State Farm maintains that testimony from inspectors and carpenters familiar with the building's problems provide evidence that Ellis Court increased its chance of loss.  The testimony by inspectors and carpenters is evidence that water leakage had occurred, but it is not evidence that Ellis Court increased the chance of loss.  The essence of State Farm's argument is that because Ellis Court did not do more, and sooner, to remedy the water leakage problem, it failed to decrease its loss.  But failure to decrease a loss is not the same as increasing a loss. . . ."

Ellis Court Apartments L.P. v. State Farm, 117 Wn. App. 807, 817 (2003) (emphasis added).

Granting all reasonable inferences to State Farm, its argument that Smyth should have done

more to prevent the intrusion of water into the structure of his home by performing better and more

frequent home maintenance is unavailing.  Like *Ellis Court*, State Farm proves only that Smyth did

not "decrease" the risk of loss, not that it increased the chance of loss.  The defense should be

dismissed.

### E.   Affirmative Defense ¶4, claiming that Smyth failed to "start an action" against State Farm "within one year after the date of loss or damage."

As we discuss above, Smyth did not violate the policy provision requiring that he "start an

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 7
C:\WP\Jeff's Cases (Active)\Smyth-State Farm\pleadings\Smyth Motion for SJ.wpd

**OSBORN MACHLER**
2125 Fifth Avenue
Seattle, WA  98121
206-441-4110 (Tel)
206-441-4220 (Fax)

action," as that term is defined in common usage, within one year after the date of loss. We know this in part by default: State Farm has refused to identify a specific "date of loss or damage," although it had every opportunity to do so during the negotiation of the tolling agreement. It should now be estopped from taking a position contrary to that which it took in the tolling agreement. Smyth "started" the action by filing it. The policy does not define "start an action" to be the same as the statutorily defined concept of "commencement of an action." It could have adopted this specific definition. It did not do so.

Moreover, the tolling agreement "tolled" something. It clearly did not toll the obligation to file a lawsuit, because this suit was filed prior to the tolling agreement, State Farm knew it, and State Farm did not condition the tolling agreement on Smyth's voluntary dismissal of that action. It could have done so. It did not do so. The only thing left to "toll" is the statutory time limit for service of a filed action: 90 days. If the tolling agreement is to be construed as meaningful, then the parties intended to toll the service deadline. At minimum, State Farm should be estopped from asserting the 90 day service limitation because that position is contrary to the clear intent of the tolling agreement.

Finally, no offer of settlement was ever made to Smyth. The tolling agreement specifically states that "your client's rights or defenses under their policy are also reserved." State Farm has never asked Smyth to release those "rights" in return for a stated performance. Accordingly, the one-month limitation of the tolling agreement was never actuated. The defense should be dismissed.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT  - 8
C:\WP\Jeff's Cases (Active)\Smyth-State Farm\pleadings\Smyth Motion for SJ.wpd

**OSBORN MACHLER**
2125 Fifth Avenue
Seattle, WA  98121
206-441-4110 (Tel)
206-441-4220 (Fax)

**F.    Affirmative Defense ¶5, claiming that Smyth's damages were "known losses."**

The *Ellis Court* decision also affirmed the summary dismissal of State Farm's "known loss"

affirmative defense, reasoning as follows:

> "The parties do not dispute the policy provided Ellis Court coverage for 'hidden decay.' Nor do they dispute that Ellis Court's record of frequent water leakage repairs are evidence that Ellis Court had reason to suspect that decay existed. At issue, rather, is the interpretation of 'hidden' in the hidden decay provision of the policy. State Farm asserts that 'a jury could conclude from the evidence in the record that Ellis Court actually knew or, at the very least, should have known at some point before July 14, 1997, that the water intrusion problems and resulting damage in the building were significant enough that a reasonable person would have concluded that collapse would be likely to occur if the building [were] not repaired.' Ellis Court maintains that under Panorama Village Condo. Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wash. 2d 130, 140-41, 26 P.3d 910 (2001), because its policy did not state otherwise, 'hidden' means 'concealed' or 'out of sight,' and the known loss defense is thus precluded. The relevant provision in the policy provides:
>
> 'We will pay for any accidental direct physical loss to covered property involving collapse of a building or any part of a building caused only by . . . hidden decay.' Panorama dealt with a policy containing a hidden decay provision similar to the one at issue here. *Panorama*, 144 Wash. 2d 130, 26 P.3d 910. In *Panorama*, a condominium complex had a history of maintenance problems. In May 1996, an investigator was unable to determine the presence of hidden decay. He then removed some siding to inspect the structural support and determined that decay had occurred and the complex was at risk of collapse due to dry rot. The insurer denied the claim Panorama submitted in July 1996, and Panorama filed suit in August 1996. The insurer challenged the trial court's summary judgment in favor of Panorama. On appeal, this court held that the trial court had erred when it determined that the term 'hidden' meant 'out of sight' or 'concealed' rather than 'known.' *Panorama*, 144 Wash. 2d at 136, 26 P.3d 910. Our Supreme Court reversed this court, observing that 'hidden' as used in the policy was ambiguous, and stated that if the insured 'intends "hidden" to mean "unknown," it must say so.' *Panorama*, 144 Wash. 2d at 141, 26 P.3d 910. Instead, 'hidden' is to be interpreted to mean 'concealed' or 'out of sight.' The hidden decay provision of the policy at issue here contains no clause or phrase limiting its interpretation to 'known.' Thus, under *Panorama*, Ellis Court's decay was hidden until it was uncovered in the

**OSBORN MACHLER**
2125 Fifth Avenue
Seattle, WA  98121
206-441-4110 (Tel)
206-441-4220 (Fax)

1      spring of 2000. Accordingly, we find that the trial court did not err in granting Ellis
2      Court summary judgment on State Farm's known loss defense."

3  117 Wn. App. at 817-19 (2003).

4      We quote at length because the analysis is as important as the holding of this case.  The case
5
6  interpreted essentially the identical language which appears in the Smyth policy.  Granting all
7  reasonable inferences to State Farm, there is no evidence in this record that the decay damage to
8  which the Smyth claim pertains was not "concealed" or "out of sight."  In fact, the evidence is
9
10  precisely to the contrary.  Smyth Declaration, ¶¶ 4 & 13.  The State Farm policies do not define
11  "hidden" as "unknown."  The defense should be dismissed.

12      **G.**    **Affirmative Defense ¶7, claiming that the "applicable statute of**
13          **limitations" has been violated.**

14      As discussed above, it is nearly impossible to determine when the one-year/18 month
15  contractual limitation period of the Smyth policies begins or expires.  State Farm has taken two
16  inconsistent positions on the date of loss: "October 9, 1998" is printed on the partial coverage
17
18  check; March of 2003 ("date of discovery") is the date State Farm chooses in its motion papers.
19  In the March 2004 tolling agreement, a point in time when specifically identifying the date of loss
20  or damage was of critical importance to State Farm, State Farm refused to take any position
21
22  whatsoever on the date of loss or damage.

23      Absent an effective contractual limitations period, the applicable statute of limitations is
24  that which pertains to enforcement of written contracts. RCW 4.16.040(1) provides that suit must
25
26  be commenced within 6 years of breach.  There is no legitimate question that this lawsuit was
27  commenced (by any definition of that term) well within the six year limitation period. State Farm's

28

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 10      **OSBORN MACHLER**
C:\WP\Jeff's Cases (Active)\Smyth-State Farm\pleadings\Smyth Motion for SJ.wpd      2125 Fifth Avenue
    Seattle, WA  98121
    206-441-4110 (Tel)
    206-441-4220 (Fax)

breach occurred in late 2003, early 2004 when it failed to promptly adjust Smyth's insurance claim, and thereafter when (during this motion practice) it finally unambiguously rejected Smyth's claim for coverage.

Lastly, State Farm contends that Smyth has failed to state a claim on which relief can be granted. This catch-all defense is unsupportable in the present litigation, other than by piggy-backing on the other affirmative defenses discussed above. No separate analysis will be furnished.

### Conclusion

For the reasons set forth herein and in plaintiff's brief in response to State Farm's motion for summary judgment, partial summary judgment in the form of the order lodged herewith should be granted to Smyth.

DATED this 3rd day of October, 2005.

OSBORN MACHLER


By  /s/ Simeon J. Osborn
                Simeon J. Osborn, WSBA #14484
                Attorneys for Plaintiff

**OSBORN MACHLER**
2125 Fifth Avenue
Seattle, WA  98121
206-441-4110 (Tel)
206-441-4220 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of October, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Timothy J. Whitter, WSBA #08660          Email: twhitters@gth-law.com
Bradley G. Davis, WSBA #20764            Email:    bdavis@gth-law.com
Michelle A. Menely, WSBA #28353          Email: mmenely@gth-law.com
Gordon Thomas Honeywell
 Malanca Peterson & Daheim, PLLC
600 University Street, Suite 2100
Seattle, WA   98101-4185
Telephone:    (206) 676-7500
Facsimile:     (206) 676-7575

Attorneys for Defendant State Farm Fire & Casualty Co.

DATED at Seattle, Washington this 3rd day of October, 2005.

                         /s/ Alison Forrest
                         Alison Forrest, Legal Assistant
                         Osborn Machler
                         2125 Fifth Avenue
                         Seattle, WA   98121
                         Telephone:    (206) 441-4110
                         Facsimile:     (206) 441-4220
                         Email:         Aforrest@osbornmachler.com

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 12
C:\WP\Jeff's Cases (Active)\Smyth-State Farm\pleadings\Smyth Motion for SJ.wpd

**OSBORN MACHLER**
2125 Fifth Avenue
Seattle, WA  98121
206-441-4110 (Tel)
206-441-4220 (Fax)