1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY SMYTH AND BETTY
SMYTH,

              Plaintiffs,

    v.

STATE FARM FIRE AND CASUALTY
COMPANY,

              Defendant.

CASE NO. C05-838JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on a motion for summary judgment from Defendant State Farm Fire & Casualty Co. ("State Farm") (Dkt. # 8).  Neither party has requested oral argument, and the court finds this matter appropriate for disposition based on the parties' briefs and supporting materials.  For the reasons stated below, the court GRANTS State Farm's motion.

## II.  BACKGROUND

Plaintiffs Jeffrey and Betty Smyth own a home on Mercer Island, Washington.  In 2001, the Smyths discovered that their roof was leaking.  Mr. Smyth contacted State Farm, his homeowner's insurance carrier, and made a claim.  The parties continued to negotiate the resolution of that claim for at least a year.

ORDER – 1

Although the timing is in some dispute, the Smyths discovered substantial additional water damage resulting from the leaking roof sometime in spring 2003.  In late May 2003, the Smyths hired a structural engineer who surveyed the extent of the damage.  The engineer found serious rotting in extensive sections of the home's walls, and estimated that it would cost more than $300,000 to repair it.  In August 2003, the Smyths contacted State Farm and brought an additional claim for this damage.

In September 2003, State Farm sent an engineer to assess the damage to the Smyth home.  Based on his assessment, State Farm concluded that the Smyths' policy covered only a small portion of the damage.  State Farm ultimately paid the Smyths just under $40,000 on their claim.

The Smyths contested State Farm's assessment of their claim, and in February 2004 filed suit in King County Superior Court.  They did not, however, serve State Farm until much later.

Shortly after filing suit, the Smyths entered a tolling agreement with State Farm. The Smyths' policy required them to commence suit against State Farm within one year:

> 6. **Suit Against Us.**  No action shall be brought unless there has been compliance with the policy provisions.  The action must be started within one year after the date of loss or damage.

Carlson Decl., Ex. J at POL 000390 (emphasis in original).[1]  In a letter confirming their tolling agreement, State Farm quoted the above policy provision (the "Limitations Clause") and immediately thereafter wrote that it was  "extending the time by which a suit must be filed from within one year to within eighteen months, or one month from

---

[1]The court has quoted language from the Smyths' 2002-2003 policy.  The parties do not dispute that every version of the policy contained the same one-year limitations period.

ORDER – 2

the date State Farm has made an offer to settle the above referenced claim, whichever is

sooner."  Carlson Decl., Ex. G (March 2, 2004 letter).

The Smyths did not serve State Farm with the complaint in this action until April

18, 2005.[2]  Shortly thereafter, State Farm timely removed the action to this court.  It now

seeks summary judgment on the Smyths' claims because they did not timely file this

action.

## III.  ANALYSIS

To resolve this motion for summary judgment, the court must draw all inferences

from the admissible evidence in the light most favorable to the non-moving party.

Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is

proper where there is no genuine issue of material fact and the moving party is entitled

to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the

initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden,

the opposing party must show that there is a genuine issue of fact.  Matsushita Elect.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The opposing party

must present significant and probative evidence to support its claim or defense.  Intel

Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  Where

a question presented is purely legal, summary judgment is appropriate without deference

to the non-moving party.

---

[2]As an Illinois corporation, State Farm operates as a foreign insurer in Washington.
Thus, the Washington Insurance Commissioner is its statutorily appointed agent for service of
process under RCW § 48.05.200.  When the Smyths served State Farm in April 2005, they did
so by serving the Insurance Commissioner.  Carlson Decl., Ex. K.  It is undisputed that the
Smyths did not serve State Farm by any other means.

ORDER – 3

The resolution of State Farm's motion for summary judgment depends in part on the interpretation of the Limitations Clause. Under Washington law, interpretation of an insurance policy is a question of law for the court. Overton v. Consolidated Ins. Co., 38 P.3d 322, 325 (Wash. 2002). The court should give the terms of the policy a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." Id. (internal quotation omitted). Terms defined within a policy are to be construed as defined, while undefined terms are given their ordinary meaning. Boeing Co. v. Aetna Cas. & Sur. Co., 784 P.2d 507, 511 (Wash. 1990).

If the policy language on its face is fairly susceptible to two different, but reasonable interpretations, ambiguity exists, and the court will apply the interpretation most favorable to the insured. Allstate Ins. Co. v. Peasley, 932 P.2d 1244, 1246 (Wash. 1997) (cited in Petersen-Gonzales v. Garcia, 86 P.3d 210 (2004)); Allstate Ins. Co. v. Hammonds, 865 P.2d 560, 562 (Wash. Ct. App. 1994) (ambiguity exists "when, reading the contract as a whole, two reasonable and fair interpretations are possible."). A court must construe ambiguity against the insurer "even where the insurer may have intended another meaning." Allstate Ins. Co., 865 P.2d at 562. Because coverage exclusions "are contrary to the fundamental protective purpose of insurance," courts are to construe them strictly against the insurer and are not to extend them "beyond their clear and unequivocal meaning." Stuart v. Am. States Ins. Co., 953 P.2d 462, 464 (Wash. 1998).

A.     **The Smyths Did Not Timely Commence Their Claim for Breach of Their Insurance Policy.**

There is no genuine dispute between the parties over the interpretation of the Limitations Clause. Even if there were, Washington law dictates the court's construction of the policy. The Limitations Clause requires that a suit against State Farm "must be started within one year after the date of loss or damage." Under

ORDER – 4

Washington law, however, a lawsuit does not "start" unless the plaintiff files suit *and* serves the defendant within 90 days of filing:

> For the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first. . . .  [T]he plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint. . . .  If . . . following filing, service is not so made, *the action shall be deemed to not have commenced for purposes of tolling the statute of limitations.*

RCW § 4.16.170 (emphasis added).  This statute applies to contractual limitations periods in insurance policies.  <u>Wothers v. Farmers Ins. Co.</u>, 5 P.3d 719,  721 (Wash. Ct. App. 2000).

 <u>Wothers</u> definitively establishes that a policyholder cannot toll a policy's contractual limitations period unless it satisfies *both* the filing and service prongs of RCW § 4.16.170  In <u>Wothers</u>, as in this action, the plaintiffs filed suit against their insurance carrier, but did not serve the carrier with the complaint until more than 90 days had passed.  <u>Id.</u>  The plaintiff's policy required him to "bring suit" within one year. <u>Id.</u>  The court held that even though the plaintiff had filed suit within the one-year limitations period, his failure to serve the complaint within 90 days meant that, under RCW § 4.16.170, he "failed to bring suit within the one year period fixed by the policy." <u>Id.</u>[3]

---

 [3]The <u>Wothers</u> court did not cite the text of the policy provision at issue.  As noted above, the policy apparently required the insured to "bring suit" within one year.  In this case, the policy required the Smyths to "start" this action within one year.  This difference in language only strengthens State Farm's position.  Under RCW § 4.16.170, an action does not "commence" unless a plaintiff files a complaint and serves it within 90 days.  The court is thus compelled to hold that an action does not "start" unless a plaintiff files a complaint and serves it within 90 days.

ORDER – 5

The parties' tolling agreement extended the one-year limitations period in this action by a maximum of six months. The Smyths argue that the tolling agreement added eighteen months to their one-year limitations period, a contention that finds no support in the plain language of the tolling agreement or anywhere else in the record. The tolling agreement "extend[ed] the time by which a suit must be filed from within one year to within eighteen months, or one month from the date State Farm has made a [settlement offer], whichever is sooner." Carlson Decl., Ex. G. The language is unambiguous: at most, State Farm extended the one-year limitations period by six months. In re Estates of Wahl, 664 P.2d 1250, 1252 (Wash. 1983) ("The interpretation of an unambiguous contract is a question of law and may be resolved on summary judgment.").

The undisputed facts show that Smyths' "date of loss or damage" was more than 18 months before it served State Farm in this action. Their breach of policy claim is timely only if their "loss or damage" occurred less than 18 months before April 12, 2005, the date they served their complaint. Thus, their loss must have occurred no earlier than October 12, 2003. The record before the court reveals that by the end of May 2003, the Smyths' structural engineer had informed them of the extensive damage to their home, and had provided an estimate for the repair. It was this damage that led the Smyths to file the claim on which this action is based. The court need not determine exactly when the Smyths' "loss or damage" accrued – it holds that the loss accrued no later than June 2003. This lawsuit commenced more than 18 months later, and is therefore untimely as to the breach of policy claim.[4]

------

[4]Even if the court were to hold that the Smyths' loss did not accrue until they filed their claim with State Farm in August 2003, this action would still be untimely.

ORDER – 6

**B.      The Court Grants Summary Judgment Against the Smyths' Remaining Claims as Well.**

In addition to their breach of policy claim, the Smyths have theories of relief that fall outside the scope of the Limitations Clause.  They brought claims for bad faith denial of insurance coverage, violations of the Washington Consumer Protection Act ("CPA"), breach of fiduciary duty, and outrage.  The court grants summary judgment on these claims because the Smyths have insufficient evidence to support them.

**1.      The Smyths Have No Evidence Supporting Their Related Claims for Bad Faith, CPA Violations, and Breach of Fiduciary Duty.**

The Smyths' claims for bad faith, CPA violations, and breach of fiduciary duty are closely related.  A bad faith claim requires a showing that the insurer acted in a manner that was "unreasonable, frivolous, or unfounded."  Dewitt Constr., Inc. v. Charter Oak Fire Ins. Co., 307 F.3d 1127, 1138 (9th Cir. 2002) (citation omitted).  Even where an insurer incorrectly denies insurance coverage, it does not act in bad faith unless its interpretation of the policy was unreasonable.  Wright v. Safeco Ins. Co. of Am., 109 P.3d 1, 9-10 (Wash. Ct. App. 2004).  An insurer's fiduciary duty is generally identical to its duty to act in good faith, and the Smyths do not identify any differences between the duties as they apply in this case.  Van Noy v. State Farm Mut. Auto. Ins. Co., 16 P.3d 574, 579 n.2 (Wash. 2001) ("We are doubtful that there is any real difference between a 'fiduciary' duty and a duty of 'good faith' in the insurance context.").  To prove a CPA violation, a Plaintiff must begin by showing an "unfair or deceptive act or practice."  Indus. Indem. Co. of the Northwest, Inc. v. Kallevig, 792 P.2d 520, 528 (Wash. 1990).

Before examining the evidence supporting the Smyths' related bad faith, CPA, and breach of fiduciary duty claims, the court notes that under any of these theories, the

ORDER – 7

Smyths must show that State Farm's actions caused them harm.  <u>Griffin v. Allstate Ins. Co.</u>, 29 P.3d 777, 785 (Wash. Ct. App. 2001).  Here, even if State Farm had improperly denied coverage, the Smyths' late service of the complaint would have prevented them from recovering damages under their policy.[5]  Thus, unless State Farm's alleged bad faith or breach of duty caused the Smyths to bring this action too late, the Smyths have no claim that would entitle them to coverage under their policy or damages equivalent to coverage.

The court finds no evidence that State Farm is responsible for the Smyths' failure to timely bring this action.  The evidence permits only one conclusion:  State Farm extended the time period for bringing this action, and the Smyths nonetheless failed to timely bring it.  There is no evidence that State Farm induced the Smyths' untimely filing, much less that it did so in bad faith.

Although the Smyths' delay in bringing this action prevents them from recovering under their policy or recovering equivalent damages under a bad faith theory, there is a narrow strand of their bad faith claim remaining.  Washington law recognizes that even where an insurer properly denies coverage, it can be liable for bad faith.  <u>Coventry Assocs. v. Am. States Ins. Co.</u>, 961 P.2d 933, 937 (Wash. 1998).  For a first-party insured, however, bad faith will not create a "coverage by estoppel."  <u>Id.</u> at 939.  Instead, the insured's remedy is limited to damages that flow directly from the bad faith actions.  <u>Id.</u> at 939-940.

_____

[5]For this reason, the court declines to consider the Smyths' argument that State Farm improperly denied coverage based on a policy amendment that it did not properly disclose to the Smyths.  The amendment, which altered coverage for structural collapse, did not alter the Smyths' obligation to bring suit within one year of loss.

ORDER – 8

The court finds no evidence supporting the narrow strand of the Smyths' bad faith claim that survives their failure to timely bring this action.  As noted above, the Smyths bear the burden of showing that State Farm's actions were not merely erroneous, but were unreasonable, frivolous, or unfounded.  State Farm offers strong evidence that it handled the Smyths' claim appropriately.  Upon receiving notice of the claim, State Farm sent an engineer to the Smyth home for an inspection.  Based on the inspection results, State Farm determined that only a portion of the damage to the home fell within the Smyths' policy.  This evidence is sufficient to force the Smyths to come forward with evidence that State Farm either inappropriately investigated the damage or otherwise acted unreasonably, and that they suffered damage as a result.  The Smyths have not done so.

The only evidence that the Smyths offer to support their bad faith claim is an expert report from Richard Kilpatrick ("Kilpatrick Report"), an attorney and former insurance claims adjuster.  The court declines to accept Mr. Kilpatrick's report as evidence for several reasons.  First, Mr. Kilpatrick is, by his own admission, "[p]rimarily a plaintiff trial lawyer."  Kilpatrick Report appendix.  On the record before the court, Mr. Kilpatrick has no experience as an insurance claims adjuster since 1973.  Although Mr. Kilpatrick's legal practice apparently involves "[m]atters of insurance problems [sic], including coverage and bad faith issues" (Kilpatrick Report appendix), his experience as a lawyer is, without more, insufficient to qualify him as an expert on the propriety of State Farm's actions.

Second, even if Mr. Kilpatrick were qualified to offer opinions in this case, his opinions are fatally conclusory.  Under Fed. R. Civ. P. 26(a)(2), an expert must submit a report that "contain[s] a complete statement of all opinions to be expressed and the basis and reasons therefor . . . ."  Mr. Kilpatrick does not, for the most part, state any basis or

ORDER – 9

reasons for his opinions.  For example, he opines that "[p]arts of the [Smyth] home needed further investigation through destructive opening to properly determine the extent of the substantial of [sic] structural impairment in the home."  Kilpatrick Report at 2.  He does not explain why State Farm's inspection was inadequate.  He does not explain what sources he relied on to determine what constitutes an adequate inspection. He does not explain what a proper inspection would have revealed.  As a second example, he states that State Farm "must pay for reasonable inspections," but does not explain what inspections it failed to pay for or how those inspections would have made a difference in the resolution of this claim.  Id.  He alleges that "State Farm was not clear with the insured," but does not point to a single example of a statement State Farm made that was unclear.  Ironically, he concludes (again without stating the basis of or reasons for his opinion) that "[n]o critical analysis and fair weighing of the evidence [by State Farm] is demonstrated in the materials I have seen so far."  Id. at 3.  The court cannot accept Mr. Kilpatrick's opinion, because it demonstrates no critical analysis or fair weighing of the evidence.  It thus falls short of the requirements of federal law.  The same is true of the remainder of the opinions in Mr. Kilpatrick's report.  The court therefore declines to accept the report as evidence.  Because the Smyths offer no other evidence to support their bad faith, CPA, or breach of fiduciary duty claims, the court grants summary judgment against them.

> **2.      The Smyths Have No Evidence that Demonstrates Arguably Outrageous Conduct.**

Finally, the court grants summary judgment against the Smyths' unsubstantiated outrage claim.  An outrage plaintiff must prove that a defendant engaged in either intentional or reckless "extreme and outrageous conduct" and that the conduct caused plaintiff "severe emotional distress."  Dicomes v. State of Washington, 782 P.2d 1002,

ORDER – 10

1012 (Wash. 1989).  "Extreme and outrageous" conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id. (citation omitted).  Before allowing an outrage claim to proceed, the court must decide whether reasonable minds could differ over whether the conduct was extreme and outrageous.  Id. at 1013.  Here, the Smyths have provided no evidence of extreme and outrageous conduct.  The court finds that reasonable minds could not differ on this point, and thus grants summary judgment against the Smyths' outrage claim.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS State Farm's motion for summary judgment (Dkt. # 8).  The court directs the clerk to enter judgment for State Farm.[6]

Dated this 17th day of October, 2005.

_____
JAMES L. ROBART
United States District Judge

---

[6]The Smyths ask the court to delay resolution of this motion pending consideration of their cross-motion for summary judgment (Dkt. # 19), which is not yet ripe.  The court has reviewed the cross-motion and finds that it raises no argument or evidence that would alter the court's analysis of this motion.  The court therefore declines to delay its disposition of this motion.

ORDER – 11